IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CANNERY WORKERS, PROCESSORS,           )
WAREHOUSEMEN & HELPERS, TEAMSTERS      )
LOCAL 601, INTERNATIONAL              )
BROTHERHOOD OF TEAMSTERS,              )
                                       )
                Plaintiff,             )    2:09-cv-01175-GEB-JFM
                                       )
          v.                           )    TENTATIVE ORDER
                                       )
DIAMOND FOODS, INC., erroneously       )
sued as DIAMOND OF CALIFORNIA,         )
                                       )
                Defendant.             )
_____   )

Plaintiff Cannery Workers, Processors, Warehousemen and Helpers,
Teamsters Local 601, International Brotherhood of Teamsters (the
"Union") and Defendant Diamond Foods, Inc. ("Diamond") have filed
cross motions for summary judgment. (Docket Nos. 16, 21.)  At issue
is whether, under the parties' collective bargaining agreement,
Diamond may be compelled to arbitrate a grievance of the Union's.  For
the reasons stated below, summary judgment is granted in favor of the
Union. (Docket No. 16.).

I.   Legal Standard

The party seeking summary judgment "bears the initial burden to
demonstrate the absence of any genuine issue of material fact."
Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1034 (9th Cir. 2007).
If this burden is satisfied, "the burden shifts to the non-moving

party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.  <u>Id.</u> (citation and quotations omitted).  "Mere argument, [however,] does not establish a genuine issue of material fact to defeat summary judgment."  <u>MAI Systems Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 518 (9th Cir. 1993).  The evidence is to be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party.  <u>See</u> <u>T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

II.  <u>Background</u>

The material facts are undisputed.  (Def.'s Reply in Supp. of Statement of Undisputed Facts ("SUF").)  The Union is an unincorporated labor organization affiliated with the International Brotherhood of Teamsters that represents, for collective bargaining purposes, employees in the canning and food processing industry. (Def.'s Response to Pl.'s SUF ¶ 1.)  Diamond and the Union are parties to a collective bargaining agreement that became effective on March 28, 2005 (the "CBA").  (<u>Id.</u> ¶ 4.)  The CBA establishes a grievance process for resolving disputes arising under the CBA that culminates in final binding arbitration.

The Union filed a grievance form on behalf of Diamond employee Ernestine Mcklin On February 1, 2008, in which it states: "[t]he company has informed Mrs. Mcklin that she has lost her benefits due to her demotion as a result of the layoff.  This is a violation of the CBA."  (Def.'s Response to Pl.'s SUF ¶ 14; Reyes Decl., Ex. B.)  The Union filed another grievance form on February 12, 2008, on behalf of "Local 601," in which it alleges that Diamond violated the grievance procedures in Article VIII of the CBA, in part, by failing to timely

respond to Ernestine McKlin's February 1st grievance.  (Reyes Decl., Ex. C.)

The Union filed an additional grievance form on behalf of Ernestine McKlin and "all affected" employees On February 13, 2008, stating: "[t]his is an amendment of the original grievance filed under Mrs. Mcklin.  The Union has learned that the benefits for many other people will be impacted by [Diamond's] lay off.  Therefore, the amendment of this grievance is to change the grievance filing to "ON BEHALF OF ALL AFFECTED." (Reyes Decl., Ex. D.)

Diamond's Vice President of Operations wrote a letter to the Union's Business Agent on March 17, 2008, in which Diamond denied the Union's February 13th grievance, stating, Diamond's "position is that there is no contractual violation."  (Reyes Decl., Ex. E.)  The Union responded in letter dated March 19, 2008 letter, in which it informed Diamond that "the Union has decided to move [the] grievance to Federal Mediation in accordance with Article IX, of the [CBA]." (Reyes Decl., Ex F.)

An arbitration hearing was scheduled for March 6, 2009 before Arbitrator Charles Askin.  (Def.'s Response to Pla.'s SUF ¶ 24.)  At the arbitration hearing, a dispute arose between the Union and Diamond concerning the scope of the grievances to be presented to the Arbitrator, and the hearing was suspended.  After the proceeding, the Union and Diamond exchanged letters which reflect their respective accounts of what transpired at the March 6th arbitration proceeding.

The Union's attorney "set forth [his understanding] of the dispute that led to the suspension of the [arbitration] proceedings" in a letter dated March 9, 2009, stating:

> The Union proposed that the following two issues be submitted to the Arbitrator for decision:

1.    Did [Diamond] fail to comply with the time limits under Article 8, Section 8.01 of the [CBA], and if so, has it waived its right to defend the grievance?

2.    Did [Diamond] violate the CBA by failing to maintain and/or reinstate benefits entitlements for employees affected by the January 2008 layoff and, if so, what is the remedy? . . . .

[Diamond] took the position that it would not agree to go forward with the arbitration if the Union intended to present evidence and submit arguments concerning the issue subsumed within [the Union's] statement of issue number two, to wit: that [Diamond] violated the CBA when it failed to restore benefits to employees whose [eligibility] was discontinued at or around the period of layoff and who thereafter resumed working in a classification of level 2 or higher . . . .

(Reyes Decl., Ex. G.)

Diamond's counsel responded to the Union's letter, in a letter dated March 18, 2009, stating in pertinent part:

On behalf of the Union, you indicated that the Union was not prepared to move forward with the hearing unless Arbitrator Askin was permitted to hear and decide whether the Company violated the CBA by not providing benefits to Ms. Maklin and other employees when she and the others were moved back to Level 2 positions.  I indicated that [Diamond] was not prepared to present the latter issue to Arbitrator Askin for decision because no rationale or reasonable reading of the two grievances (which only concerned a "demotion") could include the issue of "did [Diamond] violate the CBA when it returned Ms. Maklin or any other employee to a Level 2 position? . . . .

(Reyes Dec., Ex. H.)

The Union filed a complaint in this federal district court on April 29, 2009, in which it seeks "an order directing [Diamond] to submit the above grievances to final and binding arbitration in accordance with Article IX of the collective bargaining agreement; . . . [and] an order directing [Diamond] to reimburse the Union for its reasonable attorney's fees and costs of suit. . . ."  (Compl.

1    Prayer for Relief ¶ 3.)   Specifically, the grievances the Union seeks

2    to have Diamond compelled to arbitrate are:

3            1.  Did the Company fail to comply with the time limits
             under Article 8, Section 8.01 of the collective bargaining
4            agreement, and if so, has it waived its right to defend the
             grievance? [and]

5            2.  Did the Company violate the collective bargaining
6            agreement by failing to maintain and/or reinstate benefits
             entitlements for employees affected by the January 2008
7            layoff and, if so, what is the remedy?

8    (Compl. ¶ 9(j).)

9        III. <u>Discussion</u>

10       The parties dispute whether Diamond may be compelled to arbitrate

11   the contention that Diamond violated the CBA "by failing to . . .

12   reinstate benefit[] entitlements for employees affected by the January

13   2008 layoff."   The issue is whether Diamond's objections to

14   arbitration concern a "question of arbitrability" to be decided by a

15   court or, are a matter of "procedural arbitrability," to be determined

16   by an arbitrator.

17       Diamond argues it cannot be compelled to arbitrate the Union's

18   grievance since under the CBA, Diamond only agreed to arbitrate

19   formal, written grievances and the Union never reduced the grievance

20   of reinstating benefits to writing.   (Def.'s Opp'n. to Pl.'s Mot. for

21   Summ. J. 2).   Diamond asserts since the Union failed to comply with

22   the grievance procedures, the Union's grievance is outside the scope

23   of the CBA's arbitration clause and presents a "question of

24   arbitrability" that the court must decide.

25       The Union counters that the relevant inquiry is "whether the

26   underlying dispute which is the subject matter of the [Union's]

27   underlying grievance must be submitted to arbitration."   (Pl.'s Opp'n.

28   to Def.'s Mot. for Summ. J. 7:9-10)(emphasis omitted).   The Union also

1  argues that Diamond's contention that the Union failed to comply with

2  the grievance procedures in the CBA "is a procedural question for the

3  arbitrator" to decide.  (Id. at 10.)

4      "[A]rbitration is a matter of contract and a party cannot be

5  required to submit to arbitration any dispute to which he has not so

6  agreed to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79,

7  83 (2002).  Therefore, "the question of arbitrability - whether a

8  collective bargaining agreement creates a duty for the parties to

9  arbitrate the particular grievance - is undeniably an issue for

10 judicial determination." LAWI/CSA Consolidators, Inc. v. Wholesale

11 and Retail Food Distribution, Teamsters Local 63, 849 F.2d 1236, 1238

12 (9th Cir. 1988).  The rationale of this rule is since "[t]he duty to

13 arbitrate [is] of contractual origin, a compulsory submission to

14 arbitration cannot precede judicial determination that the collective

15 bargaining agreement does in fact create such a duty." John Wiley &

16 Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964).  Nonetheless,

17 where a collective bargaining agreement "contains an arbitration

18 clause, there is a presumption of arbitrability [and] [a]n order to

19 arbitrate the particular grievance should not be denied unless it may

20 be said with positive assurance that the arbitration clause is not

21 susceptible of an interpretation that covers the asserted dispute.

22 Doubts should be resolved in favor of coverage." Comedy Club, Inc.,

23 v. Improv West Associates, 553 F.3d 1277, 1284 (9th Cir. 2009).

24     If "it is determined . . . that the parties are obligated to

25 submit the subject matter of a dispute to arbitration, procedural

26 questions which grow out of the dispute and bear on its final

27 disposition should be left to the arbitrator." John Wiley, 376 U.S.

28 at 557(quotations omitted).  Such "issues of procedural arbitrability,

i.e., whether prerequisites such as time limits, notice, laches, estoppel and *other conditions precedent to an obligation to arbitrate have been met, are for the arbitrator to decide*." Howsam, 537 U.S. at 84 (emphasis added and omitted).  Such procedural arbitrability issues are to be decided by the arbitrator because this is in "[accordance] with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play." John Wiley, 376 U.S. at 559.

While "any potentially dispositive gateway question" could be labeled as a "question of arbitrability," to be determined by a court, "the phrase . . . has a far more limited scope." Howsam, 537 U.S. at 592.  Courts are to decide "questions of arbitrability" "in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." Id.

In this case, Article VIII of the CBA is entitled "Grievance Procedure" and sets forth a multi-step process for "the settlement of a complaint, raised by an employee claiming that a specific provision of [the CBA] has been violated.  Such a complaint [is] defined as a Grievance . . . and must be presented in the form specified and be processed in accordance with the . . . steps, time limits and conditions set forth [in the CBA.]"  (Reyes Decl., Ex. A (the CBA) § 8.01.)  It is prescribed in Section 8.04 of the CBA, "to be considered

1  a formal grievance . . . [the] grievance must be in writing and

2  contain the following information:"

3         A. Name(s) of the grievant(s);

4         B. Approximate date of alleged violation;

5         C. Nature of the [g]rievance;

6         D. Date of presentation of the formal, signed, written
          grievance; [and]
7
          E. Sufficient information or facts to provide the responding
8         party with enough information to prepare a response together
          with the specific section(s) of the [CBA] alleged to have
9         been violated.

10  (Id. § 8.04.)

11      The grievance procedures in Article VIII of the CBA establish a

12  three-step process.  Under "Step 1," "[t]he employee [is to] . . .

13  attempt to resolve the issue with his or her Production Supervisor or

14  other representative designated by [Diamond] within five (5) working

15  days from the date the claimed violation first occurred . . . ."  (Id.

16  § 8.01.)  "If no satisfactory settlement is reached . . . in Step 1,"

17  in "Step 2," "the employee can formally reduce the grievance to

18  writing on forms furnished by and maintained by the Union . . . and

19  the Union shall present the formal, signed, written Grievance to the

20  designated HR representative within five (5) working days . . . ."

21  (Id.)  The final step, "Step 3" provides that "[i]f no satisfactory

22  settlement is reached in Step 2, the grievance may be appealed to the

23  designated senior operations manager by the Union's giving written

24  notice within seven (7) working days subsequent to the meeting

25  provided for in Step 2 . . . ."  (Id.)

26      Under Article IX of the CBA, entitled "Federal Mediation

27  Arbitration," "[i]f a Grievance is not settled under the Grievance

28  Procedure provided for in Article VIII, the grievance may be appealed

to arbitration by written notice of such appeal . . . ."  (<u>Id.</u> §
9.01.)  Section 9.03(A) provides that "[t]he sole function of the
. . . Arbitrator shall be to determine whether there has been a
violation of a specific provision of [the CBA] as set forth in the
underlying Grievance."  (<u>Id.</u> § 9.03(A).)

        The grievance at issue - whether Diamond violated the CBA by
refusing to reinstate benefits to employees who were affected by the
January 2008 lay off - clearly falls within the subject matter of the
arbitration clause in Article IX of the CBA as it concerns whether
provisions of the CBA have been violated.  Diamond disagrees,
contending that whether the grievance at issue is "the type of issue
that ordinarily could be subject to arbitration" is irrelevant.
(Def.'s Opp'n. to Pl.'s Mot. for Summ. J. 9:12-13.)  Diamond argues:
"What matters is that in order for [the Union's grievance] to proceed
to arbitration, it must have been processed through the parties'
agreed-upon formal grievance procedure . . . ."  (Def.'s Opp'n. to
Pl.'s Mot. for Summ. J. 9:13-15.)

        However, Diamond's characterization of the Union's alleged
failure to comply with the CBA's grievance procedures as a "question
of arbitrability" to be decided by the court is unfounded.  Both the
Supreme Court and the Ninth Circuit have held that whether a party has
complied with grievance procedures that are a prerequisite to
arbitration is a "procedural question" which should presumptively be
resolved by an arbitrator, not a court.  <u>See</u> <u>Howsam</u>, 537 U.S. at 84
(stating that "an arbitrator shall decide whether a condition
precedent to arbitrability has been fulfilled")(quotations omitted);
<u>John Wiley</u>, 376 U.S. at 557 (holding that an arbitrator should decide
whether the first two steps of grievance procedures were completed,

where the steps are prerequisites to arbitration); <u>Hospital and</u>
<u>Institutional Workers Union Local 250, SEIU, AFL-CIO v. Marshal Hale</u>
<u>Memorial Hospital</u>, 647 F.2d 38, 41 (9th Cir. 1981)(holding that
whether union lost its right to demand arbitration by failing to
comply with the parties' collective bargaining agreement's grievance
procedures is a procedural question to be decided by an arbitrator);
<u>Lodge 1327, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO</u>
<u>v. Fraser v. Johnston Co.</u>, 454 F.2d 88, 92 (9th Cir. 1971)(holding
that union's alleged failure to satisfy grievance procedures was a
procedural question to be determined by the arbitrator).  When
"procedural requirements are made an express part of the arbitration
agreement, they become part of the bundle of issues the parties
consented to have decided by an arbitrator's special interpretative
ability."  <u>Retail Delivery Drivers, Driver Salesmen, Produce Workers &</u>
<u>Helpers Local 588 v. Servomation Corp.</u>, 717 F.2d 475, 478 (9th Cir.
1983).

The Supreme Court's holding in <u>John Wiley</u> is particularly
instructive.  In <u>John Wiley</u>, the employer argued since the union had
failed to comply with the grievance procedures in the parties'
collective bargaining agreement, the employer was under no duty to
arbitrate the union's grievance.  <u>John Wiley</u>, 376 U.S. 543 at 556.
The Supreme Court rejected the employer's argument, holding that an
arbitrator, and not a court, should decide whether the preconditions
to arbitration, including compliance with grievance procedures, have
been satisfied.  <u>Id.</u> at 559.  The Court reasoned that "whether
grievance procedures or some part of them apply to a particular
dispute, whether such procedures have been followed or excused, or
whether the unexcused failure to follow them avoids the duty to

1  arbitrate cannot ordinarily be answered without consideration of the
2  merits of the dispute which is presented for arbitration . . . .  It
3  would be a curious rule which required that intertwined issues of
4  substance and procedure growing out of a single dispute and raising
5  the same questions on the same facts had to be carved up between two
6  different forums, one deciding after the other.  Neither logic nor
7  considerations of policy compel such a result." Id. at 557. John
8  Wiley controls here, and therefore whether the Union's alleged failure
9  to comply with the grievance procedures in the CBA bars arbitration is
10 a procedural question for an arbitrator to decide.

11     Further, contrary to Diamond's unsupported argument, the Union
12 did reduce its grievances to writing through its February 1st and
13 February 13th grievances.  Even though the parties dispute whether the
14 violations of the CBA alleged in the Union's grievances include the
15 issue of benefit reinstatement, determination of what issues are
16 within the scope of the Union's written grievances is also a
17 procedural question to be decided by an arbitrator.  Such "procedural
18 questions which grow out of the dispute and bear on its final
19 disposition are presumptively not for the judge, but for an
20 arbitrator, to decide." Howsam, 537 U.S. at 84 (quotations omitted).

21     Since the arbitration clause in the parties' CBA is "susceptible"
22 to an interpretation that covers the grievance at issue, the Union's
23 grievance must be submitted to arbitration.  Diamond's procedural
24 defenses to arbitration may be submitted to, and must be decided by,
25 the arbitrator.  Therefore, the Union's motion for summary judgment is
26 granted and Diamond's motion is denied.
27 //
28 //

IV.   <u>The Union's Request for Attorney's Fees</u>

The Union argues since it prevailed on its motion, it is entitled to recover attorney's fees from Diamond because Diamond "was fully aware of the arbitration clause in the CBA and has provided no justification as to why the substantive issues themselves are not covered by the contract.  Instead, [Diamond] has engaged in a pattern of delay offering only clear procedural arguments as a basis for failing to move forward with arbitration."  (Pl.'s Mot. for Summ. J. 12.)  Diamond rejoins attorney's fees should not be awarded to the Union since Diamond was justified in refusing to arbitrate the Union's grievance.  (Def.'s Opp'n. to Pl.'s Mot. for Summ. J. 11.)

The Ninth Circuit has recognized that "labor arbitration advances the goals of industrial stabilization [and that] [e]ngaging in frivolous dilatory tactics not only denies the individual prompt redress, it threatens the goal of industrial peace.  <u>Int'l Union of Petroleum and Indus. Workers v. Western Indus. Maint., Inc.</u>, 707 F.2d 425, 428 (9th Cir. 1983)(citations omitted).  Therefore, a court may award attorney's fees to the prevailing party when the losing party "frivolously or in bad faith refuses to submit a dispute to arbitration . . . ."  <u>United Food & Commercial Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119 and 1532 v. Alpha Beta Co.</u>, 736 F.2d 1371, 1383 (9th Cir. 1984).

Diamond's refusal to submit the Union's grievance to arbitration, and allow the arbitrator to hear and decide their procedural defenses, was frivolous and without justification in light of the Supreme Court and Ninth Circuit precedent.  Diamond has unnecessarily prolonged this dispute and forced the Union to incur attorney's fees to compel

1 | arbitration in federal court.  Therefore, the Union is entitled to
2 | recover its reasonable attorney's fees incurred in this action.
3 |     V.   Conclusion
4 |         For the stated reasons, the Union's motion for summary judgment
5 | is GRANTED and Diamond's motion for summary judgment is DENIED.
6 | Diamond shall comply with its duty under the CBA to arbitrate.  The
7 | Union's request for attorney's fees is GRANTED and, within 30 days of
8 | the date this order is filed, the Union shall file a properly noticed
9 | and supported motion for attorney's fees.
10 |     **The parties are granted leave and may file a response to this**
11 | **tentative order prior to the hearing scheduled for Monday, November**
12 | **23, 2009 at 9:00 a.m. in Courtroom 10.**
13 |
Dated:  November 20, 2009
14 |
15 | _____
   | GARLAND E. BURRELL, JR.
16 | United States District Judge