IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CANNERY WORKERS, PROCESSORS,       )
WAREHOUSEMEN & HELPERS, TEAMSTERS  )
LOCAL 601, INTERNATIONAL           )
BROTHERHOOD OF TEAMSTERS,          )
                                   )
                Plaintiff,         )   2:09-cv-01175-GEB-JFM
                                   )
          v.                       )   ORDER GRANTING PLAINTIFF'S
                                   )   MOTION FOR SUMMARY JUDGMENT
DIAMOND FOODS, INC., erroneously   )   AND DENYING DEFENDANT'S MOTION
sued as DIAMOND OF CALIFORNIA,     )   FOR SUMMARY JUDGMENT
                                   )
                Defendant.         )
_____)

Plaintiff Cannery Workers, Processors, Warehousemen and Helpers, Teamsters Local 601, International Brotherhood of Teamsters (the "Union") and Defendant Diamond Foods, Inc. ("Diamond") have filed cross motions for summary judgment. (Docket Nos. 16, 21.) The cross motions were heard on November 23, 2009. The issue to be decided is whether an arbitrator has authority under the parties' collective bargaining agreement to determine what issues are within the scope of the grievances the Union seeks to arbitrate. For the reasons stated below, summary judgment is granted in favor of the Union.

I.   Legal Standard

The party seeking summary judgment "bears the initial burden to demonstrate the absence of any genuine issue of material fact." Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007).

If this burden is satisfied, "the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. Id. (citations and quotations omitted). "Mere argument, [however,] does not establish a genuine issue of material fact to defeat summary judgment." MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993). The evidence is to be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

II. Background

The Union is an unincorporated labor organization affiliated with the International Brotherhood of Teamsters that represents employees in the canning and food processing industry for collective bargaining purposes. (Def.'s Response to Pl.'s Statement of Undisputed Facts ("SUF") ¶ 1.) Diamond and the Union are parties to a collective bargaining agreement that became effective on March 28, 2005 (the "CBA"). (Id. ¶ 4.) The CBA establishes a grievance process for resolving disputes arising under the CBA that culminates in final binding arbitration. (Reyes Decl., Ex. A (the CBA))

On February 1, 2008, the Union filed a grievance form on behalf of Diamond employee Ernestine Mcklin, in which it states: "[t]he company has informed [Ms.] Mcklin that she has lost her benefits due to her demotion as a result of the layoff. This is a violation of the CBA." (Def.'s Response to Pl.'s SUF ¶ 14; Reyes Decl., Ex. B.) The Union filed another grievance form on February 12, 2008, on behalf of "Local 601," in which it alleges that Diamond violated the grievance

procedures in Article VIII of the CBA, in part, by failing to timely respond to Ms. McKlin's February 1st grievance. (Reyes Decl., Ex. C.)

The Union filed an additional grievance form on behalf of Ms. McKlin and "all affected" employees on February 13, 2008, stating: "[t]his is an amendment of the original grievance filed under [Ms.] Mcklin. The Union has learned that the benefits for many other people will be impacted by [Diamond's] lay off. Therefore, the amendment of this grievance is to change the grievance filing to 'ON BEHALF OF ALL AFFECTED.'" (Reyes Decl., Ex. D.)

Diamond's Vice President of Operations wrote a letter to the Union's Business Agent on March 17, 2008, in which Diamond denied the Union's February 13th grievance, stating, Diamond's "position is that there is no contractual violation." (Reyes Decl., Ex. E.) The Union responded in a letter dated March 8, 2008, in which it informed Diamond that "the Union has decided to move [the] grievance to Federal Mediation in accordance with Article IX, of the [CBA]." (Reyes Decl., Ex F.)

At an arbitration hearing before Arbitrator Charles Askin on March 6, 2009, a dispute arose between the Union and Diamond concerning the scope of the grievances and matters that could be presented to the arbitrator. (Def.'s Response to Pl.'s SUF ¶¶ 24, 28; Reyes Decl., Exs. G, H.) Since Diamond refused to allow the arbitrator to resolve the dispute, the arbitration hearing was suspended. (Def.'s Response to Pl.'s SUF ¶¶ 29-31.) After this suspension, the Union and Diamond exchanged letters which reflect their respective accounts of what transpired at the March 6th arbitration proceeding. (Reyes Decl., Exs. G, H.)

The Union's attorney "set forth [his understanding] of the dispute that led to the suspension of the [arbitration] proceedings" in a letter dated March 9, 2009, stating:

> The Union proposed that the following two issues be submitted to the Arbitrator for decision:
>
> 1. Did [Diamond] fail to comply with the time limits under Article 8, Section 8.01 of the [CBA], and if so, has it waived its right to defend the grievance?
>
> 2. Did [Diamond] violate the CBA by failing to maintain and/or reinstate benefits entitlements for employees affected by the January 2008 layoff and, if so, what is the remedy? . . . .
>
> [Diamond] took the position that it would not agree to go forward with the arbitration if the Union intended to present evidence and submit arguments concerning the issue subsumed within [the Union's] statement of issue number two, to wit: that [Diamond] violated the CBA when it failed to restore benefits to employees whose [eligibility] was discontinued at or around the period of layoff and who thereafter resumed working in a classification of level 2 or higher . . . .

(Reyes Decl., Ex. G.).

Diamond's counsel responded to the Union's March 9th letter, in a letter dated March 18, 2009, stating in pertinent part:

> On behalf of the Union, you indicated that the Union was not prepared to move forward with the [arbitration] hearing unless Arbitrator Askin was permitted to hear and decide whether [Dimaond] violated the CBA by not providing benefits to Ms. Maklin and other employees when she and the others were moved back to Level 2 positions. I indicated that [Diamond] was not prepared to present the latter issue to Arbitrator Askin for decision because no rationale or reasonable reading of the two grievances (which only concerned a "demotion") could include the issue of "did [Diamond] violate the CBA when it returned Ms. Maklin or any other employee to a Level 2 position? . . . .

(Reyes Dec., Ex. H.)  Diamond further asserts: "The Union never raised the promotion issue . . . at any step of the grievance procedure or at any point in time [prior to] the date of the arbitration hearing . . . ."  (Bolaños Decl. ¶ 3.)

The Union's complaint in this action seeks "an order directing [Diamond] to submit [what the Union states are] the . . . grievances to final and binding arbitration in accordance with Article IX of the collective bargaining agreement; . . . [and] an order directing [Diamond] to reimburse the Union for its reasonable attorney's fees and costs of suit . . . ." (Compl. Prayer for Relief ¶ 3.) Specifically, the grievances the Union seeks to have Diamond compelled to arbitrate are:

> 1. Did the Company fail to comply with the time limits under Article 8, Section 8.01 of the collective bargaining agreement, and if so, has it waived its right to defend the grievance? [and]
>
> 2. Did the Company violate the collective bargaining agreement by failing to maintain and/or reinstate benefits entitlements for employees affected by the January 2008 layoff and, if so, what is the remedy?

(Compl. ¶ 9(j).)

III. Discussion

The parties dispute whether the CBA authorizes the arbitrator to determine the scope of issues contained in a grievance that is to be arbitrated. Specifically, the Union argues an arbitrator is to decide whether the Union's grievances include the issue of "benefit reinstatement"; whereas Diamond contends the CBA narrowly construes the arbitrator's powers, and therefore this court must decide, as a threshold matter, whether the "benefit reinstatement" issue is properly before the arbitrator. Therefore, "[t]his is . . . a case about who should decide . . . [what issues fall within the scope of a particular grievance]." Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council, 940 F.2d 513, 523 (9th Cir. 1991).

Diamond argues the CBA expressly limits the arbitrator's authority to hearing formal grievances, and therefore, the arbitrator

5

1  lacks power under the CBA to decide procedural matters.  Diamond
2  contends that under the CBA, whether the grievance procedures have
3  been satisfied, including whether a particular grievance has properly
4  been formalized and its scope, is a jurisdictional gateway issue to be
5  determined by a court.  The Union responds that the CBA allows the
6  arbitrator to decide such procedural issues and such matters are
7  routinely resolved by arbitrators.  The Union further posits that
8  Diamond's contention that the Union failed to comply with the
9  grievance procedures in the CBA "is a procedural question for the
10 arbitrator" to decide.  (Pl.'s Opp'n. to Def.'s Mot. for Summ. J. 10.)
11      "[A]rbitration is a matter of contract and a party cannot be
12 required to submit to arbitration any dispute to which [it] has not so
13 agreed to submit."  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79,
14 83 (2002).  Therefore, "the question of arbitrability - whether a
15 collective bargaining agreement creates a duty for the parties to
16 arbitrate the particular grievance - is undeniably an issue for
17 judicial determination."  LAWI/CSA Consolidators, Inc. v. Wholesale
18 and Retail Food Distribution, Teamsters Local 63, 849 F.2d 1236, 1238
19 (9th Cir. 1988).  Since "[t]he duty to arbitrate [is] of contractual
20 origin, a compulsory submission to arbitration cannot precede judicial
21 determination that the collective bargaining agreement does in fact
22 create such a duty."  John Wiley & Sons, Inc. v. Livingston, 376 U.S.
23 543, 547 (1964).  But where a collective bargaining agreement
24 "contains an arbitration clause, there is a presumption of
25 arbitrability [and] [a]n order to arbitrate the particular grievance
26 should not be denied unless it may be said with positive assurance
27 that the arbitration clause is not susceptible of an interpretation
28 that covers the asserted dispute.  Doubts should be resolved in favor

6

of [arbitration]." Comedy Club, Inc., v. Improv West Associates, 553 F.3d 1277, 1284 (9th Cir. 2009).

If "it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." Wiley, 376 U.S. at 557 (quotations omitted). Whether a party has complied with grievance procedures that are a prerequisite to arbitration is generally a "procedural question" which should presumptively be resolved by an arbitrator, not a court. See Howsam, 537 U.S. at 84. This is because where "procedural requirements are made an express part of the arbitration agreement, they become part of the bundle of issues the parties consented to have decided by an arbitrator's special interpretative ability." Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Local 588 v. Servomation Corp., 717 F.2d 475, 478 (9th Cir. 1983).

While "any potentially dispositive gateway question" could be labeled as a "question of arbitrability," to be determined by a court, "the phrase . . . has a far more limited scope." Howsam, 537 U.S. at 592. Courts are to decide "questions of arbitrability" "in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." Id.

In this case, Article VIII of the CBA is entitled "Grievance Procedure" and sets forth a multi-step process for "the settlement of

1  a complaint, raised by an employee claiming that a specific provision
2  of [the CBA] has been violated.  Such a complaint [is] defined as a
3  Grievance . . . and must be presented in the form specified and be
4  processed in accordance with the . . . steps, time limits and
5  conditions set forth [in the CBA.]"  (Reyes Decl., Ex. A § 8.01.)  It
6  is prescribed in Section 8.04 of the CBA, that "to be considered a
7  formal grievance . . . [the] grievance must be in writing and contain
8  the following information:"

    A.    Name(s) of the grievant(s);

    B.    Approximate date of alleged violation;

    C.    Nature of the [g]rievance;

    D.    Date of presentation of the formal, signed, written grievance; [and]

    E.    Sufficient information or facts to provide the responding party with enough information to prepare a response together with the specific section(s) of the [CBA] alleged to have been violated.

(Id. § 8.04.)

The grievance procedures in Article VIII of the CBA establish a three-step process.  Under "Step 1," "[t]he employee [is to] . . . attempt to resolve the issue with his or her Production Supervisor or other representative designated by [Diamond] within five (5) working days from the date the claimed violation first occurred . . . ."  (Id. § 8.01.)  "If no satisfactory settlement is reached . . . in Step 1," in "Step 2," "the employee can formally reduce the grievance to writing on forms furnished by and maintained by the Union . . . and the Union shall present the formal, signed, written Grievance to the designated HR representative within five (5) working days . . . ."  (Id.)  The final step, "Step 3," provides that "[i]f no satisfactory settlement is reached in Step 2, the grievance may be appealed to the

8

...

designated senior operations manager by the Union's giving written notice within seven (7) working days subsequent to the meeting provided for in Step 2 . . . ." (Id.)

Under Article IX of the CBA, entitled "Federal Mediation Arbitration," "[i]f a Grievance is not settled under the Grievance Procedure provided for in Article VIII, the grievance may be appealed to arbitration by written notice of such appeal . . . ." (Id. § 9.01.) Section 9.03(A) provides that:

> The sole function of the . . . Arbitrator shall be to determine if there has been a violation of a specific provision of [the CBA] as set forth in the underlying Grievance. As such, the . . . Arbitrator shall have no authority to add to, subtract from, modify, change, alter, or ignore in any way the provisions of this Agreement or any expressly written amendment or supplement thereto, or to extend its duration unless the Parties have expressly agreed, in writing, to give the . . . Arbitrator specific authority to do so, or to make an award which has this effect.

(Id. § 9.03(A).)

Diamond argues Section 9.03(A) limits the arbitrator's jurisdiction to hearing only those grievances that comply with the procedures and requirements in Article VIII. Diamond further posits that Section 9.03(A) requires a court, not an arbitrator, to determine whether an "underlying Grievance" satisfies the grievance procedures in Article VIII. Specifically, Diamond argues Section 9.03(A) requires this court to decide whether the two grievances the Union seeks to have arbitrated comply with the requirements of Article VIII, including determining whether the "benefit reinstatement" issue is within the scope of those grievances. The Union countered at the hearing on the motions, that Section 9.03(A) only requires that a grievance cite to a specific provision of the CBA, and that the text of Section 9.03(A) does not say an arbitrator lacks authority to

decide whether the procedural prerequisites to arbitration have been satisfied. Decision on the parties' motions therefore requires interpreting Section 9.03(A) of the CBA.

"It is . . . well established that when deciding whether the parties agreed to arbitrate a certain matter courts generally should apply ordinary state-law principles that govern the formation of contracts." <u>Comedy Club</u>, 553 F.3d at 1284-85 (quotations and citations omitted). "[W]hen a contract is written, 'the intention of the parties is to be ascertained from the writing alone, if possible.'" <u>Id.</u> at 1285 (citing Cal. Civ. Code § 1639). "However, if a contract is capable of two different reasonable interpretations, the contract is ambiguous, and under the federal presumption in favor of arbitration, an arbitrator would have jurisdiction to arbitrate claims." <u>Id.</u> (quotations and citations omitted). Therefore, Section 9.03(A) must be interpreted to give effect to the parties' intent as expressed in the plain language of the CBA.

Since Section 9.03(A) includes the statement, "[t]he sole function of the . . . Arbitrator shall be to determine if there has been a violation of a specific provision of [the CBA] as set forth in the underlying Grievance," and the grievance procedures themselves constitute a "specific provision" of the CBA, Section 9.03(A) is "susceptible" to an interpretation that vests the arbitrator with the authority to determine whether there has been compliance with the grievance procedures for an "underlying grievance." However, Diamond's interpretation - that this section was intended to limit the authority of the arbitrator - is also plausible. But, acceptance of Diamond's interpretation would require inferring that the parties intended to splinter procedural disputes from the merits of a

10

grievance, creating a "delay attendant upon judicial proceedings preliminary to arbitration." <u>Wiley</u>, 376 U.S. at 558.  Absent clearer language in the CBA, such intent will not be inferred.

The plain language of Section 9.03(A) does not clearly reveal that the parties intended or expected a court to decide, as a gateway matter, the scope of a grievance and whether the grievance procedures have been satisfied.  Since Section 9.03(A) "is capable of two different reasonable interpretations, the [provision] is ambiguous, and under the federal presumption in favor of arbitration, [the] arbitrator . . . [has] jurisdiction . . . ." <u>Comedy Club</u>, 553 F.3d at 1285.  This presumption includes having an arbitrator decide the procedural issue of "[w]hether any particular issue is outside the scope of [a] grievance . . . ." <u>ARMCO Employees Independent Federation v. AK Steel Corp.</u>, 252 F.3d 854, 862 (6th Cir. 2001).

Accordingly, the Union's motion for summary judgment is granted. Diamond's objections to arbitration of the "benefit reinstatement" issue shall be submitted to, and must be decided by, the arbitrator.

### IV.  <u>The Union's Request for Attorney's Fees</u>

The Union argues it is entitled to recover attorney's fees from Diamond since Diamond "has engaged in a pattern of delay offering only clear procedural arguments as a basis for failing to move forward with arbitration."  (Pl.'s Mot. for Summ. J. 12.)  Diamond rejoins attorney's fees should not be awarded to the Union since Diamond was justified in refusing to arbitrate the Union's grievance.  (Def.'s Opp'n. to Pl.'s Mot. for Summ. J. 11.)

A court may award attorney's fees to the prevailing party when the losing party "frivolously or in bad faith refuses to submit a dispute to arbitration . . . ." <u>United Food & Commercial Workers</u>

Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119 and 1532 v. Alpha Beta Co., 736 F.2d 1371, 1383 (9th Cir. 1984).  However, the Union has not demonstrated that Diamond's contract interpretation arguments are frivolous.  Therefore, the Union's motion for attorney's fees is denied.

      V.   Conclusion

For the stated reasons, the Union's motion for summary judgment is granted and Diamond's motion for summary judgment is denied. Diamond shall comply with its duty under the CBA to arbitrate. Judgment shall be entered in favor of the Union.

Dated:  December 2, 2009

_____
GARLAND E. BURRELL, JR.
United States District Judge